UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
DAN CHERNER, on his own behalf and on behalf
of all others similarly situated,

                                Plaintiff,                  **OPINION & ORDER**

    - against -                                               No. 20-CV-8331 (CS)

WESTCHESTER JEWISH COMMUNITY
SERVICES, INC., and KATHLEEN MCKAY,

                                Defendants.
-------------------------------------------------------------x

Appearances:

Dan Cherner
The Cherner Firm
Rye, NY
*Pro Se Plaintiff*

Michelle A. Frankel
Martin Clearwater & Bell, LLP
New York, NY
*Counsel for Defendant McKay*

Daniel W. Milstein
Aaronson Rappaport Feinstein & Deutsch, LLP
New York, NY
*Counsel for Defendant Westchester Jewish Community Services, Inc.*

Seibel, J.

       Before the Court are the Motions to Dismiss of Defendants Kathleen McKay, (ECF No.

18), and Westchester Jewish Community Services, Inc. ("WJCS"), (ECF No. 20). For the

following reasons, the motions are GRANTED.

**I.     BACKGROUND**

       For purposes of this motion, the Court accepts as true the facts, but not the conclusions,

alleged by Plaintiff in the Amended Complaint. (ECF No. 15 ("AC").)

A.   **Facts**

In May 2016, Plaintiff filed for custody of his children in New York State Family Court, and filed an Amended Petition on August 30, 2016. (AC ¶¶ 12-13.) On September 29, 2016, the Family Court appointed Defendant McKay, a psychologist employed by or affiliated with Defendant WJCS, (*id.* ¶¶ 6, 15), to perform a forensic evaluation of Plaintiff and his family to assist in the determination of custody issues, (*id.* ¶ 16).[1] Plaintiff alleges that he "and the other party were ordered to pay defendant McKay $7,500.00 each – in other words, the court decided that this was a 'private pay' matter as opposed to the court system paying for the evaluation." (*Id.* ¶ 25.) Plaintiff challenges the timing, methods, content and conclusions of McKay's evaluation. (*Id.* ¶¶ 22-77.) In November 2017, the New York State Family Court "issued a final order giving [Plaintiff] primary physical custody of his children." (*Id.* ¶ 82.)

Plaintiff brings this action against McKay, the court-appointed forensic evaluator, and WJCS, McKay's employer.[2]

---

[1] Plaintiff attached the Family Court Order of Forensic Examination, (ECF No. 22-1 (the "Order")), to his Declaration, (ECF No. 22). I may consider the Order on this motion, as it is integral to the complaint. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). Plaintiff's Declaration, (ECF No. 22), which he filed in addition to a memorandum of law, (ECF No. 21 ("P's Opp.")), is mostly argumentative and an apparent end-run around my page limits for briefs. *See Quattlander v. Ray*, No. 18-CV-3229, 2021 WL 5043004, at *2 n.4 (S.D.N.Y. Oct. 29, 2021) ("I will not allow counsel to bypass the page limits on memoranda of law set by my individual practices by submitting additional argument in the form of an affirmation."); *Novie v. Village of Montebello*, No. 10-CV-9436, 2012 WL 3542222, at *9 (S.D.N.Y. Aug. 16, 2012) ("[I]t is improper for a court to consider declarations and affidavits on a motion to dismiss."). As an attorney, Plaintiff should have known better.

[2] Plaintiff names both McKay and WJCS as Defendants and argues that they both "act[ed] as the court-appointed forensic examiner in [his] custody matter." (P's Opp. at 1.) The Order, which is on a standard form, names "Kathleen E. McKay, PhD, Westchester Jewish Community Services" as the "Agency . . . appointed as the forensic evaluator with respect to this matter." (Order at 1.) It appears that Plaintiff and the "other party" paid McKay directly, (AC ¶ 25), and because no conduct by WJCS is alleged in the AC apart from McKay's, it appears, as

2

B. **Procedural History**

Plaintiff filed the original complaint in this action on October 6, 2020.  (ECF No. 1.)  In January 2021, Defendants filed separate requests for pre-motion conferences in contemplation of their motions to dismiss.  (ECF Nos. 6, 10.)  The Court held a pre-motion conference on February 11, 2021, and granted Plaintiff leave to amend the complaint.  (*See* Minute Entry dated Feb. 11, 2021.)

Plaintiff filed the Amended Complaint on April 2, 2021.  (AC.)  Plaintiff seeks damages and injunctive relief for violations of his First and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 and asserts state-law claims for fraud and negligent infliction of emotional distress ("NIED").  (*Id.* at ¶¶ 99-161.)[3]  With respect to his federal claims, Plaintiff alleges that Defendants violated his First and Fourteenth Amendment (1) "liberty interest in retaining custody of his children," (*id.* ¶ 101), (2) "right to personal privacy and family relationships," (*id.* ¶ 111), (3) "liberty interest in preserving the integrity and stability of his family from intervention without due process of law," (*id.* ¶ 120), (4) "right to raise his children free from state interference absent some compelling justification for interference," (*id.* ¶ 129), (5) and "liberty interest in the care, custody, and management of his children," (*id.* ¶ 138).  The instant motions followed.  (ECF Nos. 18-20.)

---

WJCS argues, "that WJCS's inclusion in the pleadings is solely the result of the allegation that Dr. McKay was affiliated with WJCS," (ECF No. 20-2 at 6).

[3] The first paragraph of Plaintiff's AC mentions the Fifth Amendment, (AC ¶ 1), but as Defendant McKay argues, "there is no mention or substantiation" of any alleged Fifth Amendment violation, (ECF No. 18-2 at 10 n.1).  Plaintiff also cites the Declaration of Independence, (AC ¶ 1), but "there is no private right of action to enforce the Declaration of Independence," *Nguyen v. Bank of Am.*, No. 14-CV-1243, 2015 WL 58602, at *3 (E.D.N.Y. Jan. 5, 2015).  Plaintiff seeks to represent an undefined class.  (AC ¶¶ 92-98.)

## II.     LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679.  Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

4

misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (cleaned up) (quoting Fed. R. Civ. P. 8(a)(2)).[4]

## III. DISCUSSION

In *Falco v. Santoro*, No. 18-CV-2480, 2018 WL 6706312 (E.D.N.Y. 2018), a closely analogous case, the plaintiff sued the court-appointed psychologist who was tasked with "conduct[ing] a forensic evaluation of [the plaintiff] and [his ex-wife] with respect to custody of their children and related issues." *Id.* at *1.[5] The court dismissed the case on jurisdictional grounds but explained that "insofar as Plaintiff seeks to impose Section 1983 liability on the court-appointed attorneys for the children in the Matrimonial Action, as well as court-appointed psychologist and caseworkers, such individuals do not act under color of state law and are immune from suit under the doctrine of absolute witness immunity." *Id.* at *4 n.4. The same is true of Defendants here.

### A. State Actors

A claim for relief under § 1983 must allege facts showing that each defendant acted under the color of a state "statute, ordinance, regulation, custom, or usage." 42 U.S.C. § 1983. Private parties are therefore not generally liable under the statute. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012) ("'Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the

---

[4] Because Plaintiff is a lawyer, he is not entitled to the special solicitude normally accorded to *pro se* litigants. *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010).

[5] The plaintiff brought claims for deprivation of his "Fourth and Fourteenth Amendment rights to due process" and "fraud and other tort-based claims." *Id.*

5

challenged conduct constitutes state action.'") (quoting *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005)); *Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties.").

There are, however, limited circumstances under which a private party can be deemed a state actor under § 1983. Although there is "no single test to identify state actions and state actors," *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 491 (2d Cir. 2009) (cleaned up), courts in this Circuit rely on three tests:

> For the purposes of section 1983, the actions of a nominally private entity are attributable to the state (1) when the entity acts pursuant to the coercive power of the state or is controlled by the state ("the compulsion test"); (2) when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies ("the joint action test" or "close nexus test"); or (3) when the entity has been delegated a public function by the state ("the public function test").

*Fabrikant*, 691 F.3d at 207 (cleaned up). The main inquiry under each test is "whether the private entity's challenged actions are 'fairly attributable' to the state." *Id.* (citing *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)).

Plaintiff has failed to establish state action under any of these three tests. Plaintiff's allegations that "[D]efendants were state actors," (AC ¶¶ 7-11, 83-84), are conclusory, and Plaintiff does not plausibly allege that anything Defendants did employed the "coercive power" of the state, was closely "entwined" with the state, or amounted to the state delegating a "public function" to them. *Fabrikant*, 691 F.3d at 207 (cleaned up); *see Davis v. Whillheim*, No. 17-CV-5793, 2019 WL 935214, at *9-10 (S.D.N.Y. Feb. 26, 2019).[6]

---

[6] Plaintiff has cited no case to support his argument that a "Family Court order set[ting] the framework for the defendants' assignment," (P's Opp. at 3), transforms them into state actors. Nothing McKay did was coerced, controlled, encouraged or joined by the Court – indeed, by Plaintiff's account she violated the Family Court Order, (AC ¶¶ 34, 40, 64, 79, 86,

"[C]ourt-appointed psychologist[s] . . . do not act under color of state law . . . ." *Falco*, 2018 WL 6706312, at *4 n.4 (collecting cases); *see Young v. N.Y. State Corr. & Cmty. Supervision*, No. 18-CV-5786, 2019 WL 591555, at *4 n.9 (E.D.N.Y. Feb. 13, 2019) (courts dismiss section 1983 claims "against court-appointed psychologists . . . on the grounds that they are not state actors."); *Davis*, 2019 WL 935214, at *10 ("Simply providing the Family Court with allegedly defective reports does not support allegations that [clinicians employed by private organizations] should be treated as state actors."); *Elmasri v. England*, 111 F. Supp. 2d 212, 221 (E.D.N.Y. 2000) (granting summary judgment dismissing § 1983 claim challenging outcome of divorce and custody proceedings and holding court-appointed guardian and psychologist were not state actors even though paid with state funds).  Here, McKay was a court-appointed psychologist tasked with performing a forensic evaluation of Plaintiff and his family.  Thus, she is not a state actor and, it follows, neither is WJCS.

### B. Quasi-Judicial Immunity

Even assuming Defendants are state actors – and they are not – Defendants would still be entitled to dismissal because they are immune from suit.  "[A]bsolute immunity may attach to non-judicial officers and employees where the individual serves as an arm of the court or where the individual conducts activities that are inexorably connected with the execution of court procedures and are analogous to judicial action."  *McKnight v. Middleton*, 699 F. Supp. 2d 507, 527 (E.D.N.Y. 2010) (cleaned up); *see Henderson v. Heffler*, No. 07-CV-0487, 2010 WL 2854456, at *3 (W.D.N.Y. July 19, 2010) ("Absolute immunity has been extended to court-appointed social workers, doctors, psychiatrists, and evaluators" on "inexorably connected"

---

107, 112, 121, 130, 139, 156-57) – nor is practicing psychology or performing evaluations a public function.

theory) (cleaned up). "Court-appointed forensic evaluators act as arms of the court and enjoy judicial immunity from federal civil rights liability as a non judicial person who fulfills a quasi-judicial role at the court's request." *Monte v. Vance*, No. 18-CV-9595, 2018 WL 11302546, at *4 (S.D.N.Y. Nov. 7, 2018) (cleaned up).

Defendant McKay was "appointed as the forensic evaluator" by the Family Court, (Order at 1), and her alleged indiscretions pertain to the way she carried out her court-assigned task, (*see generally* AC).  Thus, Defendants McKay and WJCS are immune from suit.  *See Monte*, 2018 WL 11302546, at *5 ("[M]ental health professionals" were "entitled to absolute quasi-judicial immunity for their conduct in evaluating Plaintiff's competency."); *Falco*, 2018 WL 6706312, at *4 n.4 ("[C]ourt-appointed psychologist[s] and caseworkers . . . are immune from suit under the doctrine of absolute witness immunity.") (collecting cases); *McKnight*, 699 F. Supp. 2d at 527 (social worker and psychotherapist appointed by family court entitled to absolute quasi-judicial immunity for their actions in interviewing and consulting the parties in a Family Court proceeding and preparing a report to the court); *Hunter v. Clark*, No. 04-CV-0920, 2005 WL 1130488, at *2 (W.D.N.Y. May 5, 2005) (court-appointed psychiatrists who examined the plaintiff and submitted reports to court regarding competency to stand trial entitled to absolute immunity); *Di Costanzo v. Henriksen*, No. 94-CV-2464, 1995 WL 447766, at *2 (S.D.N.Y. July 28, 1995) ("The doctrine of witness immunity bars an action against [clinical psychologist and medical doctor who provided medical and psychological evaluations to the court] even if they did not formally testify as witnesses in the proceedings, since their role in the proceedings would have been essentially that of witnesses."); *see also Mikhail v. Kahn*, 572 F. App'x 68, 71 (3d Cir. 2014) (court-ordered custody evaluators immune because "[i]ndividuals charged with the duty of carrying out facially valid court orders enjoy quasi-judicial absolute immunity" and "immunity

extends to evaluative functions when the evaluation is done, as it plainly was here, to assist the court in its decision-making process") (cleaned up); *Shallow v. Rogers*, 201 F. App'x 901, 904 (3d Cir. 2006) ("[C]ourt-appointed evaluators are entitled to judicial immunity because of their integral relationship to the court. Thus, it follows that . . . both court-appointed psychologists . . . are entitled to judicial immunity.").

### C. State Law Claims

In addition to Plaintiff's federal claims, Plaintiff further alleges that his rights were violated under New York state law. The "traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental jurisdiction where all federal-law claims are eliminated before trial. *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Having determined that the only claims over which this Court has original jurisdiction should be dismissed, and having considered the factors set forth in *Cohill*, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law causes of action. *See* 28 U.S.C. § 1367(c)(3). Accordingly, although I tend to agree with Defendants that the allegations here do not approach those required for NIED and fraud, Plaintiff's NIED and fraud claims are dismissed without prejudice.

### D. Leave to Amend

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (cleaned up). "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons. *Ruotolo v.*

*City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended once, after having the benefit of pre-motion letters from Defendants stating the grounds on which they would move to dismiss, (ECF Nos. 6, 10), as well as the Court's observations during the pre-motion conference, (*see* Minute Entry dated Feb. 11, 2021). In general, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*.") (cleaned up); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (cleaned up).

Further, Plaintiff has not asked to amend his federal claims again or otherwise suggested that he is in possession of facts that would cure the deficiencies identified in this opinion. *See*

10

*TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how amendment would cure the pleading deficiencies in the complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make the complaint viable and plaintiffs did not request leave to amend). Indeed, "[t]he problem[s] with [Plaintiff's federal] causes of action [are] substantive," and "better pleading will not cure [them]." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

Accordingly, the Court declines to grant leave to amend *sua sponte*.

### IV. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are GRANTED. The Clerk of Court is respectfully directed to terminate the pending motions, (ECF Nos. 18-20), and close the case.

**SO ORDERED.**

Dated: February 28, 2022
       White Plains, New York

                                                                         _____
                                                                         CATHY SEIBEL, U.S.D.J.